The next matter, number 23-2086, United States versus Regeneron Pharmaceuticals, Incorporated. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning, Your Honor. I'm the attorney of the court, Daniel Winnick for the government, and I'd like to reserve three minutes for rebuttal. There are basically two components to the question before the court in this case. The first is whether the text of the 2010 amendment, the phrase resulting from, requires a but-for standard causation. And if not, the second question is, what is the proper standard of causation? I'll start with the first question. Much about the phrase resulting from is undisputed. We don't dispute that, as Burrage explains, the phrase creates a requirement of actual causality or causation in fact. We don't dispute that, as Caroline says, but-for causation is the default standard of causation in fact. And we don't dispute that, as Burrage says, courts regularly read phrases like resulting from to require but-for causation as long as there is no, quote, or contextual indication to the contrary. But you don't have to look further than the passages I just read to understand why Regeneron and the Sixth and Eight Circuits are wrong to treat the phrase resulting from as dispositive of the question before the court. Because as those cases made clear, courts don't read phrases like resulting from to require a but-for standard of causation where there is a textual or contextual indication to the contrary. Caroline illustrates the point. The petitioner there argued, exactly as Regeneron does, that the word result implied a but-for causation standard under which he couldn't be required to pay any restitution for injuries that would have been the same even if he had not acted. Yet not a single justice accepted that argument. The majority explained that, quote, such unelaborated causal language, in other words, the phrase result from, by no means requires but-for causation by its terms, that courts have, quote, departed from the but-for standard where circumstances warrant, that, quote, alternative and less demanding causal standards are necessary in certain circumstances to vindicate the law's purposes, and that, quote, the availability of alternative causal standards is no less than the but-for standard as the default, part of the background legal tradition against which Congress legislates. And the majority refused to adopt a causal standard, quote, so strict that it would undermine congressional intent where neither the plain text of the statute nor legal tradition implied such an approach. And Justice Sotomayor would have gone further. And the other three dissenters, although they reached the bottom line result urged by the petitioner in that case, did not do so on the ground that Regeneron urges. Rather, they thought Congress had not made it. Sure, but in Paroline, you have the context being the overall structure and import of the statute itself and its manifest purpose would essentially be eliminated by construing the language as proposed by the defendant in that case. Do we have that here? I think we do, with really the same degree of force as in that case. So the purpose of the AKS is to forbid kickbacks in themselves because they make it impossible to trust that doctors and other medical professionals are acting in the best interest of the patients. And that's why Congress, that's why Medicare and Medicaid categorically refuse to pay for financially conflicted care. It's why claims for that care had always been treated as false before the 2010 Amendment. And so it really just defies logic, just as in Paroline, to think that when Congress enacted the 2010 Amendment in an effort, as this Court has already recognized in Guilfoyle, to bolster the proof of FCA claims based on AKS violations, that what Congress meant to do there was say, oh, no, actually, if you're on the take from a manufacturer and you do exactly what the manufacturer wants you to do and you submit a claim for it, actually, that's perfectly fine and that claim is payable by the federal government, absent some proof that you would have acted differently but for the care. Because I understand your theory. Take a hospital that's sending a vendor 10,000 claims a year. And the vendor then decides they'd like to get more. So they start providing free machinery and honorariums to the people at the hospital who are referring the claims. And tell them expressly, and we assume in advance you'll think of us when your referrals and send some more. Well, the next year, they then said 5,000, not 10,000. They drop. And yet, under your theory, as I understand it, all 5,000 of those claims would be false claims. That's right. And let me try to explain why that's not counterintuitive. Medical science constantly changes. There are new drugs, new devices. There are new literature showing that something may or may not be better for a certain patient. If you are on the take from a manufacturer to use its device, and every time after that, that you use that device, that is not a decision that we can trust is motivated by the best interest of the patient. That is categorically financially conflicted care that Medicare and Medicaid won't pay for. And you don't know, in the world in which they weren't on the take from the manufacturer, maybe zero times they would have been. You say, you use the phrase on the take. Your definition of kickbacks here is not quite so. Providing free machinery, the hospital is glad to get it. So I want to stress that the definition is not  Unbeknownst to the hospital, it was at half its price. So I want to make clear that the meaning of the anti-kickback statute is not at issue here. So your example may be But it is. Because if we want to know how the but-for clause applies, we need to know what is applying. And it's being used here in relationship to tying the anti-kickback transaction to a false claim. So the reason I say it's not is, what we have here is the assumption that somebody is giving remuneration to induce the provision of items or services. There may be close questions in some cases. Maybe the hypothetical you just gave is one, whether that's remuneration, whether it's intended to induce the provision of a device, whether everybody's acting with the requisite CNR. Those issues are not in the question that's before the court. The question before the court is, assume there's an anti-kickback statute violation. Under what circumstances does that render a subsequent claim false? Why would you think Congress would think that way, rather than thinking about the whole picture and the way this fits together? In Paroline, they find they didn't fit together, so they didn't go with a particular reading of results from. And if it produces odd results, then one might hesitate. So I don't think it produces odd results, but I think you have to look at the statutory history here, which is four years and years before the enactment of the 2010 amendment. Claims for the items or services that a kickback was given to induce had been treated as false under the false certification theory. And so when Congress then created this specific amendment to the AKS to state the connection, to state specifically which claims render claims false for FCA purposes, what it was doing was simply overruling a recent district court decision that it said claims weren't false for FCA purposes if they were submitted by someone other than the kickback violator. That's all that Congress was doing when it was enacting the 2010 amendment. That, and it created a per se rule of materiality. Well, I think for you to say that's all it was doing, you need to go beyond the text of the statute. You have to go beyond the text of the statute, but you don't have to go beyond the statutory history. And what license do we have to delve into the statutory history on this? So what I want to say just quickly about the text of the statute, one of our key points in this case is from the text resulting from, you don't get but for causation. What you get from the text resulting from is some sort of factual nexus. It's not resulting from. To look to the standard of causation, you don't just look to the text of the statute. You have to look to context. And so that's where you start looking to statutory history, you start looking to legislative history. And what precedent do you point us to whereby context, you mean not just the context of the statute as a whole, but you mean looking at what particular members of Congress said in statements? So I think Paroline is a perfect example. I mean, if you were looking just sort of in isolation at the text of the statute in Paroline, if you thought results from had to mean but for causation, as Regeneron argues, that would have been a very simple case. The petitioner would have won 9-0. And the reason the court didn't reach that conclusion in Paroline is it looked to the broader context. It looked to what Congress was trying to do when it passed that statute. But did it look at what some congressmen said on the floor in introducing the bill, or did it instead look at the text of it? The context it focused on was the context of the statute as a whole, not going through the legislative history, finding statements that cut one way or the other. So it didn't rely on legislative history in the same way, but we also don't necessarily rely on legislative history that way. I think you can look to the statutory history, the statute, and the backdrop of case law against which Congress has acted, and discern what Congress was trying to do. And this court has already precedentially held what Congress was trying to do. If we start with the presumption that resulting from means but for causation, but not always if the context provides otherwise, and if we accept your decision that this language was added to cure the indirect, the laundering through an innocent intermediary and it cured that, what they picked resulting from to do it, what is there in that history that would say they meant a different resulting one than the presumptively applicable one? I mean, I think the result, the statutory history makes two things clear. First, it makes clear that the standard can't be but for causation, because that would be completely at odds with the statutory, the policy of the AKS and with the history of the case law that had understood claims for the items or services a kickback was given to induce as false. Second, I think the statutory history shows that our standard is the right one. Because again, for essentially the same reason, it had always been true that claims for the items or services a kickback was given to induce were false. And Congress enacted this amendment as an amendment to a statute that stated that as the kind of connection Congress was concerned about. Congress forbade kickbacks when they were given to induce items and services. And so it makes perfect sense in light of that backdrop to say when Congress then said items or services resulting from a kickback, what it meant was the items or services a kickback is given to induce. And crucially, that doesn't mean that there's an FCA violation whenever there's an anti-kickback statute violation. A kickback can be rejected, or the person can take it and then not provide the items or services that the payors sought to induce. Or it may not be submitted to a federal health care program. And in all those situations, there's not an FCA violation. So is the odd result that you have a broad scheme, but if you have a but-for standard, you would have to go patient by patient or doctor by doctor, and you would never be able to attack the broader scheme because you wouldn't be able to prove it because it would require individualized proof? So it may, and that is certainly an oddity. I think the broader oddity is just that it asks a question that Congress has never been concerned with. It asks the question, would someone who's receiving the kickback actually have acted differently if they weren't getting the kickback? And that is not a question that matters to the proof of an AKS violation. It's not a question that ever mattered in the case law against the backdrop of which Congress was acting. And if Congress actually meant to make that relevant, it surely would have written this provision very differently than it did. And so it doesn't make any sense to read that sort of requirement into this provision, given the backdrop against which Congress was acting. I was a little confused by your false certification argument, and I'm wondering if you could just touch on that in terms of how do we interpret the statute here in light of that argument that you made in your briefs? I think the way in which it matters in this case is you have to recognize that that is the backdrop against which Congress was acting. And you have to say, given that as the backdrop, how do we understand this provision? And our point is that it would be very strange if, against that backdrop, Congress, in this provision, meant to create a but-for-causation standard that was never in the backdrop. Congress would have written the provision very differently if what it had meant to do was abrogate that line of cases as opposed to bolster that cases. And again, this court has already held in gill foil what Congress was trying to do in that provision was bolster the proof of SCA cases based on AKS violations, not abrogate the line of cases that had preceded it. I'm still having some trouble understanding the relationship between these direct claims and a false certification claim and why, even if everything you said so far was wrong, the government could not proceed with a false certification claim. We could. So what difference does this make? What's the difference between this claim and the false certification claim at the end of the day as far as the government's concerned? So let me make two points. One, there is a slight difference under the false certification claim. We have to prove materiality under the 2010 Amendment materiality as per se as the court said in gill foil. The second point is not everybody has agreed with us that we can continue to proceed on a false certification theory. There are some people who have argued that the 2010 Amendment somehow extinguishes the false certification theory of falsity. If this court definitively holds that that's not true, that we can still proceed on a false certification claim, then I think we can largely do everything we do under the 2010 Amendment. I think if that were left in doubt, that would be a much bigger problem for the government. Because the certification is not just that this claim is not subject to a kickback, but it's not, I can't remember the precise language, but it's not part of a scheme or exposed to it or something like that. So there's various different forms, the Medicare and Medicaid forms, and they all say slightly different things. But I think that the relevant point is claims to federal health care programs like Medicare and Medicaid do certify in some fashion that the anti-kickback statute is complied with. And when those claims are for the items and services that a kickback was given to induce, that certification is false, and that's a basis for liability. Again, as long as everybody is clear that the 2010 Amendment did not extinguish that means of proving falsity, which that's certainly our view, that that remains a viable means of proving falsity. Well, has any circuit said it isn't? No. There's one district court that has said it isn't. Again, as long as this court clarifies that's an available means of proving falsity, I think we can do largely what we can do under the 2010 Amendment. I'm happy to reserve the remaining time for rebuttal. I don't think you have any. Thank you, counsel. At this time, if counsel for the athlete would please introduce themselves on the record to begin. Good morning, your honors. And may it please the court, Paul Clement for Regeneron, the athlete here. This case involves the straightforward issue of statutory construction and the meaning of resulting from. And my friend from the government starts with a series of concessions. And I have to say, my friend concedes quite a bit. He concedes that resulting from is a requirement of causation. He doesn't talk much about the government's own alternative standard here, which I dare say is not a test of causation at all. So I'll get to that eventually. But he does concede that it means some test of actual causation. He then concedes that the ordinary meaning of resulting from is but for causation. And he does say, but there is a default recognized in cases like Peroline or even in Burrage itself for certain narrow circumstances. And he really puts all his eggs in the basket of saying, this is a situation where you can show from context that Congress has an intent to deviate from the default in ordinary meaning of resulting from. But two things I think are important about why that argument just doesn't work in this particular statute. The first is that in both Burrage and Peroline, when they're talking about a deviation from but for causation, they're talking about relatively specific and relatively narrow situations that have long been recognized by the common law. Specifically, multiple sufficient causes, the classic two hunters shoot at the same duck and kill them at the same time. And then the situation where you have collectively sufficient but individually insufficient causation, three people pushing on a car, they get it over the cliff, but no two of them alone could have done it. Those are the limited exceptions they're talking about. And I actually think Peroline itself is a situation of multiple sufficient causality. Can I focus you in on Peroline? Sure. Well, I agree that the issue of the thousands of bad actors that there were in Peroline isn't present in this particular case. I'm wondering, though, if the actual causal link between the kickback and the claim is quite difficult to trace here, just like the victim's harm in Peroline was. And I'm wondering, I guess, if there's typically some type of clear empirical evidence in a case like this that could track the district court hypotheticals where, for example, there are 50 claims before the kickback and then there are 100 claims after, such that it would make it relatively feasible to show but-for causation here. Sure, let me try to answer that question directly and then get back to Peroline if I can. So to answer that question directly, I think the government's going to have trouble showing but-for causation here, but I think that's because this is a pretty extravagant anti-kickback claim to start with. We didn't give the money directly to the doctors. We gave the money to a charity who then distributed it on a first-come, first-served basis. In the first year, where there's a substantial number of false claims, the charity actually had sufficient funds from one of our competitors, and so the people would have gotten the charitable co-pay whether we contributed to the fund or not in 2013. So in this case, I think it's going to be hard. But in the mine run case, and keep in mind, in Peroline, the problem was in virtually every child pornography case, it was going to be impossible to prove but-for causation. In a mine run anti-kickback case, it's not going to be that difficult. And I use an example, the case that I think we all agree that if you're going to look at the legislative history, you're going to see this United States XRL Thompson against Bailey case, that that's what the Congress was trying to react to. Well, if you look at that case, it's a perfect example of where if the government can prove a kickback, it can prove but-for causation, because you had the relator in that case was a Medtronic salesperson. And the salesperson said, I was selling this doctor a ton of Medtronic devices, Medtronic of the state of the art. And then all of a sudden, this guy gets, this doctor gets a no-show consulting contract. And then all of a sudden, he switches all of his devices from Medtronic to Blackstone. And that's pretty similar to the facts in the Hutchison case that this court had as well. So in that case, but-for causation is as easy as proving as falling off a log. And you're going to have that in a number of these cases. If you give the doctor sort of free vials of medicine, and the doctor is then able to put a reimbursement claim in for those free vials of medicine, direct line, but-for causation. If you give the doctor vials that have 150% of the medicine that the doctor really needs so he can actually get three reimbursement claims while only paying the manufacturer for two, it's going to be very easy to prove that at least one of those was a but-for causation. Take this case. Would it be enough if we accepted as true the allegations concerning the fund, in particular, that let's just assume that 100% of the money that went into the fund was from Regeneron, and 100% went out was for Copays, and they controlled it. Wouldn't that be enough to raise for pleading purposes, and maybe even Rule 56 purposes, an inference of but-for causation that could be rebutted like any inference could be rebutted? I mean, I think if those were the facts, that might be enough to get the issue to the jury. As one of your earlier questions indicated, I think one of the problems with the Greenfield standard or the standard the government's embracing with you today is it's not a test for causation at all. It would prove the whole case even without ever proving causation. But if you do adopt a but-for causation standard, as Judge Saylor held in this very case, it's not an insurmountable obstacle. We argued that on this record, you couldn't prove but-for causation. I'd still like to believe that. But Chief Judge Saylor disagreed with us on that and denied summary judgment on that ground. So you would be able to get to the summary judgment in some cases like that. Of course, I'm answering your hypothetical. I'm not answering the facts of our case, where, as I said, it's a two-drug sort of, you know, And as I said, for 2013, which is like half the claims at issue here, our contributions. Because there isn't, depending on how you apply it, there isn't a great deal of room between a but-for causation and, yes, these facts can establish an inference of but-for causation, because the inference would be sufficient to shift the burden then to the other side to do something, or else the jury would be instructed they could but need not rely on the inference. I mean, I think that there are, you know, obviously this then ends up exactly how this gets applied when the rubber meets the road at the point of a case being tried also depends a little bit on, you know, the answer of how much you have to go claim by claim and some of those other issues. But whatever the sort of tests are for those which are going to apply in all sorts of cases, not just AKS cases, I think that the standard, and that's why we're up here at this kind of preliminary stage, the judge has to know how to instruct the jury. The judge has to know how to think about whether or not there's sufficient evidence in the summary judgment record. And a judge can't think about that unless they know whether it's a but-for test or some other test. I promise I get back to Paroline. I do think, and I think one of the earlier questions gets to this, but when Paroline was talking about context, it was not talking about legislative history. It was really talking about the rest of the restitution statute. And part of what I think almost impelled the majority to the result it got to in that case is that it wasn't just looking at results, and that was the only word it was interpreting. It also was interpreting that word in the context of a mandatory restitution statute. So it really had this conundrum. Congress is telling them, you must award restitution in a class of cases that include child pornography cases. And if you apply but-for causation to child pornography cases, the government will essentially never be able to carry its burden. And the majority opinion basically recognized two competing aspects of the statutory text to come up with this kind of compromise that probably doesn't map on to any normal causation standard. And that was basically what divided it from the dissent, at least the three principal dissenters, who basically said, yeah, the statute's at cross purposes, but it's clear that the government has to prove its case and it hasn't proved its case. But there's nothing analogous here to the text that says mandatory restitution. There's no text that says you always have to be able to bring an AKS claim. And I think that's important to recognize that the structure of this is, in every case where the government can't prove but-for causation, if it can prove an AKS violation, it can prove a felony. And so this isn't a situation where you have to be worried that there's going to be no deterrence or Katie barred the door on AKS violations. And I think the particular provision at issue here is a recognition by Congress that AKS, bad, bad, very bad, criminal, and then in some cases, but not all, it's also going to result in a false claim for items or services that result from the AKS violation. And in that subset of AKS violations, in addition to all the other penalties for an AKS violation, you can also bring a false claim. But that's a perfectly coherent system. Where there's just an AKS violation, you go to prison. But if there's an AKS violation that results in false claims for items and services that wouldn't otherwise be billed to the government, then you get a False Claims Act claim in addition to that. One loose end I'd like to talk about here before I sit down is the question of, can the government still bring an implied certification claim after the 2010 amendments premised on a violation of the AKS? My friend tells you that the government would very much like to do that. And he says there are some differences. They would have to prove materiality in those cases. I'd like to tell you that you can't do that after the 2010 amendment. Because once Congress tells you what the standard is for a false claim premised on an AKS violation, I don't think at that point you can continue to have an implied certification theory premised on an AKS violation that is based on some lesser standard of causation. I think I have the better of the argument. I don't think you have to resolve this. Judge Thompson, you asked, is there a circuit that's come up with this? I don't think any circuit has yet addressed that question specifically. I think it's actually teed up in the 8th Circuit because two district courts have come to diametrically opposite conclusions on that question. And I think it's a hard enough question, although I think I'm right, that I would urge you not to resolve that case in the context of resolving this question about the causality standard and the 2010 amendments. The other thing I'd say, and this I think is responsive to your question about how does the implied certification theory fit into all of this, I think the thrust of the government's argument is it was settled before 2010 that you could bring an implied certification claim based on an AKS violation without proving causation. And Congress wouldn't have wanted to disturb that in the 2010 amendments. And I think a big problem with that argument is it fails at its premise. It was not well established in 2010 that you could bring an implied causation theory on an AKS violation at all. And it wasn't at all clear exactly what the causal nexus would be in the context of all of this. Part of the reason you know that is look to this court's own case in Hutchison. It's a 2011 case. So this court, which has more False Claims Act claims than the average circuit, doesn't even get around to definitively addressing this until 2011. In 2011, they don't actually embrace an implied certification theory. They say they're not doing that because there's an express certification in that case. But in the process, they point to the lower courts being essentially split on the question of whether you can have implied certification claims and what you have to prove. So the world is, in 2010 when Congress is passing the statute, the world is not crystal clear implied certification, no need to prove causation. It's a much unclear world. So I think the argument fails on the premise. The other thing I'd point out about the 2010 amendment is that under either side's view of resulting from, Congress achieved its goal. So there's no reason to look at the legislative history here. That's not what Paroline meant by context. But even if one wants to take the proverbial peak, what one's going to see is two things that I think are relevant. One is, the two senators that spoke about this in their own brief remarks actually used the phrase resulting from. So I don't know, it kind of puts this in a way, they certainly didn't talk like they were trying to get rid of causation. But I think the more important thing is, it's crystal clear what they were trying to do. They were trying to solve the indirect false claim, laundering it through somebody. So I know I've committed an AKS violation, but I'll have the hospital that doesn't know that submit the claim and then I'm off scot-free, even though I've totally committed an AKS violation and the false claim totally resulted from my AKS violation. That's what Congress is trying to fix. Was the statute enough to solve that problem, which was the problem I think that was raised in Thomas? Particularly, does giving the government this additional means of establishing the falsity element in the FCA sufficiently avoid the problem of protecting or insulating wrongdoers from liability where an innocent party submits a claim? I think under either party's reading of the text, that problem is solved. I mean, somewhat ironically, in this circuit, the problem was solved before it became a problem because Hutchinson reaches the same conclusion based on a pre-2010 set of claims. So they were correcting a District of Arkansas case that I don't think would have been affirmed if by magic it could have been appealed to the First Circuit. But at the end of the day, Congress addressed that problem with particular text and you have to give the particular text its plain and ordinary meaning. And the plain and ordinary meaning of results from is but-for causation. And the last thing I'll say before I sit down is, the government said they had a second issue, which is, well, if it's not but-for, what is it? Well, the one thing it can't be is hoped-for correlation. And that's really what they're saying. If I intended a result and it materializes, that somehow is results from. I'm sorry, that is correlation. That is not causation. And if Congress wanted to adopt that, it could, and I think about the last words it would have used, are resulting from. Thank you, Your Honors. Thank you, Counsel. At this time, Counsel for the United States has a three-minute rebuttal that they had reserved at the beginning. Thank you, Your Honor. I'd like to take the district court's hypothetical because I think it really is a useful lens through viewing the issue here. So the district court said, you have a doctor who treats 100 patients in a year with a given condition. He prescribes drug A to 50 of them and drug B to 50 of them. And then he starts getting kickbacks from the manufacturer of drug A to prescribe drug A. And the following year, lo and behold, he writes a prescription for drug A for 75 of the patients and a prescription for 50. And then he writes a prescription for drug B for 25 of the patients. The question is, what did Congress intend for, of those 75 claims for drug A, how many of them are false, right? What Regeneron wants you to think is that only 25 of them are false, that what Congress had in mind was that 50 of those claims for drug A prescribed by the guy who was on the take from the manufacturer of drug A are truthful claims that the federal government is supposed to pay those claims even though that is exactly the sort of financially conflicted care that is forbidden by the AKS, claims for which had always been treated as false before the 2010 amendment, that doesn't make any sense. It doesn't make any sense and you didn't hear a word from Mr. Clement today that would explain to you why it should make sense. What their argument is, almost in its entirety, is that you have to reach that conclusion because the words of the statute leave you no choice because resulting from has to mean but for causation. And that is what, I realize Paroline has decided in a different factual circumstance, but that is what Paroline squarely forecloses. Nine justices of the Supreme Court, in that case, all declined to adopt the view that the phrase result from has to mean but for causation. They all thought it meant something different and the reason they thought it meant something different is that they thought it was appropriate, as Burrage itself had said, to look to the broader statutory context to determine whether that is the sensible means of proving causation. This is a causal standard. You heard him say today, it's just correlation, not causation. In their brief, they compared it to the rally cap of the Red Sox fan who wants to beat the Yankees. The reason it is completely unlike that situation is a rally cap has no rational connection to the outcome of the game. The Red Sox aren't gonna play better with the rally cap, but a doctor is going to have a significant additional incentive to write a prescription for a drug if the manufacturer of that drug is paying him to do so. And we may not know in the given situation whether that financial incentive is what tipped him over the top into actually writing the prescription, but we do know that it gave him a significant additional incentive to do so. That's why Congress has always forbidden the kickback in itself without reference for whether it actually changed his decision making. And it would be completely inconsistent with the policy of the AKS or the long direct backdrop of case law against which Congress was acting to say that all of a sudden that is now dispositive. How would you describe the causation standard for the hypothetical? For the hypothetical in the district courts? It's very simple. The question is what was the manufacturer trying to induce? If the manufacturer was trying to induce prescriptions of drug A, so for example, he was giving the doctor $100 for every prescription of drug A, and the manufacturer- In the situation where you have 50-50 and then a shift to 75, you seem to be saying that it's not just the 75, it's not just the 25, but the whole 75. How would you describe the causation standard for 75%? The causation standard under this amendment is you look at was the manufacturer trying to induce prescriptions of drug A? If so, and the doctor then wrote those prescriptions, those prescriptions include items or services resulting from the kickback within the meaning of the 2010 amendment. I realize that's not but-for causation. That isn't but-for causation, but it is causation within the meaning of the 2010 amendment because Caroline tells you it doesn't have to be but-for causation. You can use an alternative standard, and indeed you have to use an alternative causal standard if the but-for causation standard would produce a result that is completely at odds with what Congress meant. To be precise, your standard is actually if that doctor in that hypothetical had not gone from 50 to 75, but had gone from 50 to 25 out of the 100, you would still say all 25 are false claims. Right, and the reason we would say that, again, as I gave earlier in response to your hypothetical about the hospital, is medical science constantly changes. You have no reason to think that the year after the kickback started that the doctor wouldn't have written zero prescriptions if he wasn't on the take, and so you have to. What's the historical analog for your version of causation? Historical analog in the sense of like another case where this standard has been applied? Yeah, I mean, I'm familiar with Summers versus Tice. You've got in some small jurisdiction, small number of jurisdictions. You've got market share liability, but what is this, is your standard here just effectively a brand new one? We think it's specific to this provision. I'm not, there's not any. So there's no historical analog at all in the history of Western jurisprudence? No, but there are plenty of historical analogs for our standards of causation that are not but-for causation. There was an analog for the standard in Paroline either. So you're saying there are other but, other non-but-for standards, but you want none of them? Correct, again, as we've said in other cases, there's some analogy to contributory causation, but no, there's not a precise historical precedent for this, nor was there in Paroline, and that didn't stop the Supreme Court from saying, we're gonna come up with a standard that makes sense under the circumstances of the statute, and that is causal because we don't think the words resulting from require us to follow a but-for standard that would make no sense. But so how exactly would you articulate that standard? What I've heard today is some sort of factual connection. Right, the factual connection is, is the claim for the items or services that the kickback was given to induce. That's the standard. Thank you. Thank you, Your Honor. Thank you, counsel. That concludes argument in this case.